IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| MARLON ANDRE BROASTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 113-032 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Marlon Andre Broaster ("Plaintiff") appeals the decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

## I.  BACKGROUND

### A.  Procedural History.

Plaintiff applied for DIB on November 7, 2011, alleging a disability onset date of June 15, 2011. Tr. ("R"), pp. 179-186. The Social Security Administration denied

---

[1] For ease of reference, the Court will hereinafter refer to the Acting Commissioner as "Commissioner."

Plaintiff's application initially, R. 130-33, and on reconsideration, R. 137-40. Plaintiff then requested a hearing before the Administrative Law Judge ("ALJ"), R. 141-42, which was held on October 17, 2012. R. 32-84. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Dr. John Black, a Vocational Expert ("VE"). Id. On November 5, 2012, the ALJ issued an unfavorable decision. R. 7-24.

Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since June 15, 2011, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*).

2. The claimant has the following severe impairments: Posttraumatic Stress Disorder (PTSD); Traumatic Brain Injury (TBI); Depression; Right Elbow Cubital Tunnel Syndrome and Olecronon Bursitis; Near Acuity Both Eyes; Degenerative Disc Disease of the Lumbar Spine (20 CFR 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

4. After careful consideration of the entire record, the claimant has the residual functional capacity ("RFC") to perform light work[2] as defined in 20 C.F.R. § 404.1567(b) except: he should never climb ladders, ropes or scaffolds; he can only occasionally reach overhead with his right arm; he cannot have exposure to loud noises; he cannot operative [sic] machinery that would require distant vision; he is able to do unskilled work

---

[2]"Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

       involving simple routine tasks, simple/short instructions and simple work-related decisions with few work place changes; he should have no exposure to the general public; he should have only occasional exposure to supervisors and coworkers. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

5. Considering the claimant's age, education work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including "hand packager," "electronic worker," and "garment sorter" (20 C.F.R. §§ 404.1569 and 404.1569(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from June 15, 2011, through November 5, 2012 (the date of the ALJ's decision) (20 CFR 404.1520(g)).

R. 12-20.

When the Appeals Council denied Plaintiff's request for review on January 29, 2013, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ did not properly assess Plaintiff's testimony of limitations due to both severe and non-severe impairments in determining his RFC, and (2) the hypothetical question to the VE was incomplete and did not properly include all of Plaintiff's limitations and symptoms associated with his PTSD, TBI, depression, and migraine headaches. (See generally doc. no. 7 (hereinafter "Pl.'s Br.").)

      **B.**     **Factual Allegations.**

Plaintiff was thirty-four years old on his alleged onset date and thirty-five years old when the ALJ issued her decision. R. 7, 179. Plaintiff has a high school education and a four-year college degree in biology. R. 35. At the time of the hearing, Plaintiff was in a wounded warrior unit assigned to Fort Gordon, where he received medical care at the Eisenhower Medical Center. Pl's Br., p. 2.

3

Plaintiff alleged he was disabled due to various conditions, including (1) PTSD, (2) TBI, (3) migraine headaches, (4) hearing and vision loss, (5) shoulder, hand, back, and knee pain, (6) sleeping disorder, (7) depression, and (8) personality disorder. R. 36-37; Pl's Br., pp. 4-6. Plaintiff served tours of duty in Iraq with the United States Army and alleges that his impairments arise out of this service. R. 37; Pl's Br., p. 2. Plaintiff testified that he was in two explosions from improvised explosive devices (IED) and as a result he has PTSD and TBI. R. 36, 57-60; Pl's Br., pp. 2-4. He is hypervigilant and constantly suspicious of his surroundings and others, "as if he is in a war setting." R. 57-61, 66-67; Pl's Br., pp. 4-6. He prefers to avoid having his back to doors and windows because he might "snap" if anyone comes up behind him suddenly. R. 50-51; Pl's Br., p. 6.

Plaintiff testified that his alleged migraine headaches are caused by the IED explosions and occur five to six times per month, generally last four hours in duration, and have caused him to go to the emergency room five times. R. 36, 45-47; Pl's Br., p. 6. These migraine headaches also cause him to wear sunglasses all the time, as bright light, in addition to loud sounds, worsen the headaches. R. 45-47, 56; Pl's Br., p. 6. Plaintiff alleges he is currently taking medication for his migraine headaches, but prefers not to take any because it makes him woozy or gives him a drunk feeling. R. 41-45; Pl's Br., p. 5.

As to Plaintiff's back and knee pain, he testified that he suffers from back spasms and has to lie down and sometimes have his children walk on his back. Tr. 62-63; Pl's Br., 5. His back spasms are purportedly consistent with MRI findings in November 2011. R. 366-67; Pl's Br., p. 5. He testified that his back pain goes down his legs and he uses a

4

cane prescribed by a treating physician. R. 45-48; Pl's Br., pp. 5-6. Plaintiff testified that this pain affects his physical abilities. R. 49-50. Plaintiff alleges that he can walk about forty to fifty feet before he has to rest, and his back begins to hurt after sitting for more than twenty minutes or standing for more than twenty to twenty-five minutes. Id.; Pl's Br., p. 6.

Plaintiff asserted he had rotator cuff surgery and surgery on his right hand to remove a tendon around his ring finger. R. 48-50; Pl's Br., p. 6. His shoulder and hand pain generally limit him to lifting no more than 10-15 pounds. R. 50; Pl's Br., p. 6. He also testified that sometimes his hand will freeze up and stay locked in a position. R. 48; Pl's Br., p. 6.

Plaintiff's wife testified that Plaintiff has problems at home, including complications from a sleep disorder. Plaintiff allegedly is rude to the children, is up most of the night pacing when he is home on the weekends, and keeps a weapon under his pillow. R. 68-70; Pl's Br., p. 6. Plaintiff and his wife allegedly have also attended counseling. R. 68-70; Pl's Br., p. 6.

## II.  STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 401 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its

judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. The ALJ Properly Discredited Plaintiff's Testimony Concerning the Limiting Effects of his Back Pain, Migraine Headaches, and Symptoms Related to Plaintiff's PTSD and TBI.

Plaintiff argues that the ALJ erred when determining his RFC by improperly discrediting his testimony regarding back pain, migraine headaches, as well as limitations associated with his PTSD and TBI. Pl's Br., pp. 9-14.

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980) (*per curiam*). As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district

court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (*per curiam*) (internal quotation marks and citations omitted). As explained below, the ALJ properly conducted the Holt analysis and reached the conclusion that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however Plaintiff's subjective complaints concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the "extent that he has alleged that he is incapable of working." R. 17.

### 1. The ALJ Thoroughly Discussed and Properly Discredited Plaintiff's Complaints of Pain in His Back.

Plaintiff argues that the ALJ ignored Plaintiff's testimony regarding his back pain by simply making summary findings instead of evaluating his testimony with specificity. Pl's Br., p. 12. Additionally, Plaintiff asserts that the ALJ erred when evaluating Plaintiff's testimony regarding his back pain by disregarding MRI findings consistent with back pain. Id. at 11-12.

In his RFC determination, the ALJ first discussed Plaintiff's alleged back pain but noted that an MRI in August 2011 showed only mild multilevel degenerative changes of the lumbar spine, with only mild central canal narrowing and no significant neuroforaminal stenosis. R. 15, 298-99. Additionally, an x-ray of the lumbar spine showed that Plaintiff's intervertebral disc spaces are "well preserved." Id. at 15, 1238. The ALJ then noted that treatment records from December 5, 2011 indicated Plaintiff had not been compliant with recommended physical and occupational therapy by not following his home exercise program and refusing some treatment modalities. R. 15, 1237. See 20 C.F.R. § 404-1529.(c)(3)(v) (allowing an ALJ to consider a claimant's

treatment history when evaluating credibility); SSR 96-7p, 1996 WL 374186, at *7 (a claimant's statements "may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed.") The ALJ further noted that Plaintiff continued to attend therapy sessions from June 14, 2012 to September 17, 2012, but was released each time without limitations related to his back pain. Id. at 15, 1614, 1618, 1623, 1627, 1631, 1635, 1639.

Nevertheless, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his allegations concerning the intensity, persistence, and limiting effects of his symptoms "are not credible to the extent he has alleged that he is incapable of working." R. 17. In addition to the August 2011 MRI discussed above showing "only mild degenerative changes," the ALJ noted that "there is no record that [Plaintiff] has experienced deficits in strength or muscle atrophy because of his condition." Id. Additionally, despite Plaintiff's complaints of back pain, "there is no record of him being prescribed pain medication, much less narcotic pain medications." Id. Instead, Plaintiff has received only conservative treatment in the form of therapy sessions. Id.. The Eleventh Circuit has stated "[a] doctor's conservative medical treatment for a particular condition tends to negate a claim of disability." Sheldon v. Astrue, 268 Fed. App'x 871, 872 (11th Cir. 2008) (*per curiam*).

Thus, because the ALJ thoroughly discussed Plaintiff's subjective complaints of back pain in light of the medical evidence of record, his credibility determination is supported by substantial evidence, and provides no basis for remand. Foote, 67, F.3d at 1562; Fortenberry, 612 F.2d at 950.

### 2. The ALJ Thoroughly Discussed and Properly Discredited Plaintiff's Complaints Related to His Migraine Headaches.

Plaintiff asserts that the ALJ erred by discrediting Plaintiff's complaints of migraine headaches merely on the basis that there was no neurological or scientific data in the record. Pl's Br., pp. 11-14. He additionally argues that the record is unclear as to what, if any, credibility findings the ALJ made as to the truthfulness and believability of Plaintiff's symptoms related to migraine headaches. Id.

In his RFC determination, the ALJ discussed Plaintiff's extensive treatment notes from June 2011 through October 5, 2012, which indicated that Plaintiff was diagnosed with TBI with post-concussive syndrome, had some cognitive slowing and trouble concentrating in August 2011, and complained about frequent headaches, but "neurological examinations were unremarkable." R. 15. Indeed, despite Plaintiff's reports of frequent headaches and Botox providing little relief, the ALJ cited treatment notes with normal neurological findings. R. 15, 305, 402, 562, 571, 583, 588, 616-20, 628, 1164, 1226-27, 1319, 1473-74.

The ALJ then found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms "are not credible to the extent he has alleged that he is incapable of working." R. 17. The ALJ found that Plaintiff was generally consistent in reporting headaches to his treating physicians, but "the record does not establish that these headaches are incapacitating." Id. Indeed, in addition to the above normal neurological findings, as late as September 6, 2012, the Army's Medical and Physical Evaluation Board Proceedings related to Plaintiff's disability evaluation determined that Plaintiff's headaches did not prevent him from continuing in service. R. 17, 1644.

The ALJ rejected Plaintiff's subjective complaints concerning the intensity, persistence, and limiting effects of his migraine headaches after thoroughly evaluating the evidence in the record and properly considering Plaintiff's testimony under the Holt standard. Because he provided explicit and adequate reasons for finding Plaintiff's testimony not to be credible, the ALJ's credibility determination is supported by substantial evidence. Foote, 67 F.3d at 1562.

### 3. The ALJ Thoroughly Discussed and Properly Discredited Plaintiff's Complaints Related to Symptoms from his PTSD and TBI.

Plaintiff also contends that the ALJ ignored Plaintiff's testimony regarding symptoms related to PTSD and TBI by simply making summary findings instead of evaluating his testimony with specificity. Pl's Br., 12-13. Additionally, Plaintiff asserts that the ALJ erred when evaluating Plaintiff's testimony regarding his limitations resulting from PTSD and TBI by disregarding a brain scan indicating a 7 mm cyst liaison and medical records verifying Plaintiff's testimony. Id. at 11-12.

In his RFC determination, the ALJ noted that Plaintiff had frequented hospitals for group therapy and social work sessions, was treated for anxiety and sleep disturbances, and received medication to help him sleep and prevent nightmares, but Plaintiff had never received an anti-depressant or anti-anxiety medication. R. 16, 295-925, 1668-69. The ALJ also discussed at length Dr. Adrian Janit's January 2012 psychological examination for Plaintiff's complaints of PTSD and TBI. R. 16-17, 926-35. Dr. Janit diagnosed Plaintiff with PTSD and depression, but also found that (1) he was oriented to time, place, person, and situation, (2) he was able to complete serial additions and subtractions with some disability, (3) his remote memory was intact and

short-term memory was fair, despite his immediate and recent memories being poor, (4) his abstract reasoning, judgment, and insight were intact, (5) his concentration was fair, as he responded to questions within normal limits, and (6) his speech was normal. Id. Additionally, Dr. Janit concluded that Plaintiff's scores on a series of diagnostic tests were probably not representative of his true abilities because Plaintiff's "performance indicates suboptimal effort, and test data should be interpreted with caution, as scores for some tasks may represent an underestimate of his maximum cognitive capacity." R. 17, 930. His "Test of Memory Malingering" score also indicated "possible suboptimal effort." Id.

Additionally, the ALJ noted that Plaintiff was referred to neuropsychologist Dr. Scott Mooney for an evaluation of his alleged cognitive problems, but Dr. Mooney could not diagnose Plaintiff with a cognitive disorder because he had to "discontinue testing early due to insufficient approach and motivation during the intellectual-cognitive portion of the test." R. 15, 1197-1202. The ALJ further cited Dr. Mooney's note that "it was unlikely that the claimant would continue to experience cognitive problems solely because of a concussion" because "the vast majority of people who experience a concussion typically fully recover[] within 3 months after injury." Id.

The ALJ then found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms "are not credible to the extent he has alleged that he is incapable of working." R. 17. The ALJ had "no doubt that [Plaintiff's] PTSD and Depression has caused him some limitations," however "the evidence does not support the conclusion that these conditions incapacitate [him]." R. 17. Indeed, the ALJ explained that, while the Army's Medical and Physical Evaluation Board Proceedings

12

related to Plaintiff's disability evaluation determined that he did not meet retention standards because of his PTSD, Plaintiff's extensive treatment records revealed he has never required inpatient mental health treatment, anti-depressants or anti-anxiety medications, and he has been able to independently attend his frequent medical appointments. R. 17-18, 295-925, 936-1607, 1663.

Furthermore, the ALJ addressed the opinions of Dr. Marc Husid and Dr. Janit. R. 18-19. The ALJ explained three reasons he gave little weight to Dr. Husid's October 5, 2012 opinion that Plaintiff should not continue to serve in the military in light of his PTSD and TBI. First, decisions made by other agencies are not binding on the ALJ in determining the RFC, R. 18, 1668. See 20 C.F.R. § 404.1504 ("a determination made by another agency that you are disabled . . . is not binding on us"). Second, the ALJ noted it was unclear what standards Dr. Husid relied on to make his one-paragraph conclusion. Id. Third, the ALJ explained that he agreed with Dr. Husid that Plaintiff should not continue to serve in the military due to his PTSD and TBI, but noted that Dr. Husid had not expressed an opinion as to Plaintiff's RFC to perform civilian work. R. 18.

The ALJ then stated that he gave some weight to Dr. Janit's opinion from Plaintiff's psychological evaluation that he had only (1) mild limitations in maintaining attention and concentration, (2) mild limitations in adhering to a work schedule and completing tasks in a timely fashion, (3) mild to moderate limitations in withstanding stresses and pressure associated with most work, and (4) moderate limitations in interacting with others. Id. at 18, 934. The ALJ gave Dr. Janit's opinion some weight, but it was too vague to be used in an RFC assessment because Dr. Janit failed to indicate what abilities Plaintiff retained. R. 18. Nevertheless, the ALJ noted that his RFC finding

13

addressed these limitations, but he explicitly stated that to the extent Dr. Janit's opinion "could be interpreted to indicate Plaintiff has greater limitations, the undersigned gave little weight to his opinion because it is inconsistent with [Plaintiff's] very conservative treatment." Id.; see Sheldon, 268 Fed. App'x at 872.

In sum, the ALJ rejected Plaintiff's subjective complaints after thoroughly evaluating the evidence in the record and properly considering Plaintiff's testimony under the Holt standard. The ALJ's credibility determination is supported by substantial evidence because he provided explicit and adequate reasons for finding Plaintiff's testimony not to be credible. Foote, 67 F.3d at 1562.

**B.    The ALJ Properly Relied on the VE's testimony to Determine that Plaintiff Was Not Disabled.**

Plaintiff asserts that the hypothetical question to the VE was incomplete and did not properly include limitations imposed by Plaintiff's severe impairments of PTSD, TBI, depression, and migraine headaches. Pl's Br., pp. 15-16. Additionally, Plaintiff contends the hypothetical question did not properly include the ALJ's findings that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in social functioning, and mild difficulties in concentration, persistence, and pace. Id.

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987) (*per curiam*); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985) (*per curiam*); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."); Coleman

14

v. Barnhart, 264 F. Supp.2d 1007, 1011 (S.D. Ala. 2003) (failing to comprehensively describe a claimant's impairments and limitations is grounds for remanding case for further proceedings). However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford v. Comm'r of Social Sec., 363 F.3d 1155, 1161 (11th Cir. 2004) ("the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"); see also Loveless v. Massanari, 136 F. Supp.2d 1245, 1250-51 (M.D. Ala. 2001) (noting that non-severe impairments may be omitted from hypothetical questions).

Here, the underlying assumptions of the hypothetical questions posed to the VE accurately and comprehensively reflected Plaintiff's characteristics. McSwain, 814 F.2d at 619-20. First, at Step Two, the ALJ found that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in social functioning, and mild difficulties in concentration, persistence, and pace. R. 13. The ALJ then evaluated Plaintiff's RFC and found "he is able to do unskilled work involving simple routine tasks, simple/short instructions and simple work-related decisions with few work pace changes; he should have no exposure to the general public; he should have only occasional exposure to supervisors and coworkers." Id. at 14. The ALJ included these limitations in the first hypothetical to the VE. R. 77-78. Thus the ALJ's hypothetical question did, in fact, contain the limitations the ALJ had already identified. Moreover, as stated above, the ALJ thoroughly discussed the evidence regarding Plaintiff's PTSB, TBI, depression, and migraine headaches, and included the limitations and symptoms associated with these severe impairments to the extent they were supported by the medical evidence and credible. R. 14-19. However, the ALJ properly excluded those of Plaintiff's alleged

limitations that he found to be non-severe, unsupported, or incredible. Crawford, 363 F.3d at 1161.

In sum, because the hypothetical question presented to the VE accurately and comprehensively reflected Plaintiff's characteristics, the ALJ's reliance on his testimony was proper, and her determination that Plaintiff was not disabled is supported by substantial evidence. McSwain, 814 F.2d at 619-20; Pendley, 767 F.2d at 1562-63; Jones, 190 F.3d at 1229.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 29th day of April, 2014, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA